**ATLANTIC SUGAR, LTD., and Redpath Sugars, Ltd., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Amstar Corporation, Party-in-Interest.**

**Court No. 80-5-00754.**

United States Court of International Trade.

Oct. 14, 1983.

Rogers & Wells, Washington, D.C. (Robert V. McIntyre and George C. Smith, Washington, D.C., on briefs), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C. (David M. Cohen, Director, Commercial Litigation Branch, Francis J. Sailer, Commercial Litigation Branch, Washington, D.C., on briefs), for defendant.

Sullivan & Cromwell and Baker & McKenzie, Washington, D.C., for party-in-interest.

MEMORANDUM OPINION
AND ORDER

WATSON, Judge:

This is the fourth decision in the course of a judicial review of a final determination

made by the International Trade Commission (ITC) in an antidumping investigation. The ITC determined that the importation of refined sugar from Canada, sold at less than fair value from October 1, 1978 through March 21, 1979, was causing material injury to a regional industry in the United States.[1]

In the first judicial decision, the Court remanded the matter for reconsideration upon discovery of miscalculations in the data underlying some of the ITC's findings.[2] Subsequently, the ITC found that even with the corrected data, the aggregate profits for the domestic producers continued to decline.[3]

In the second judicial decision, the Court rejected the aggregation method utilized by the ITC in this particular investigation as an inappropriate approach to finding that injury was experienced by "the producers of all or almost all, of the production within that market" as required in a regional industry investigation. Section 771(4)(C) of the Tariff Act of 1930 (19 U.S.C. § 1677(4)(C)). At issue was whether the Canadian importations caused material injury to the Revere Sugar Corporation (Revere), which was the second largest producer, providing roughly one quarter of the production in the region. In the absence of a finding of injury to Revere, the Court noted that it would be difficult to sustain a finding of injury to the region.[4] Accordingly, the Court ordered that the ITC "determine whether the Revere Sugar Corporation suffered injury within the meaning of this statute and if not, whether there is any reason to conclude that those who *were*

injured are the producers of all or almost all the production in the region."[5] This resulted in another ITC determination of injury.[6]

That determination was rejected by the Court in the third judicial decision because the ITC based its conclusions as to Revere's injury upon "an evaluation of data that was not confined to Revere's operation within the eleven-state Northeast regional limitation of this investigation."[7] The ITC included the data on Revere's plant in Chicago, which is outside the region under investigation. The matter was again "remanded to the ITC to determine whether Revere Sugar Corporation's Northeast regional operations, exclusive of the Chicago plant, suffered material injury."[8] The Court further ordered that "This determination must take into account the information on Revere's sales and profits for 1976 and 1977, unless the Commission chooses to disregard this data and gives its reasons for doing so."[9]

Once again, the Court must review the ITC's determination of injury to Revere Sugar Corporation.

The Court accepts the ITC's reasons for not utilizing the 1976 and 1977 data on Revere's predecessor-in-interest. The Court was concerned with the possibility that the absence of that data might have detracted from a complete and accurate analysis of the effect of Canadian imports. However, the significant reservations expressed by the accountants who audited the reports, including misrepresentations

1. *Sugars and Sirups From Canada,* Inv. No. 731–TA–3, (March 6, 1980).

2. *Atlantic Sugar, Ltd., et al. v. United States,* 2 CIT 18, 519 F.Supp. 916 (1981).

3. *Sugars and Sirups From Canada,* Inv. No. 731–TA–3 (October 5, 1981).

4. The ITC has already determined that two other regional producers, Monitor Sugar Co. and Michigan Sugar Co., were not materially injured by the Canadian imports.

5. *Atlantic Sugar, Ltd., et al. v. United States,* 2 CIT 295 (1981).

6. *Sugars and Sirups From Canada,* Inv. No. 731–TA–3 (April 26, 1982).

7. The region consists of the states of Connecticut, Maine, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island and Vermont.

8. *Atlantic Sugar, Ltd., et al. v. United States,* 4 CIT 248, 553 F.Supp. 1055 (1982).

9. *Id.*

**1144**

by management, and an inability to rely upon the corporation's internal accounting controls are a substantial basis for the agency decision to disregard the data.

In support of this latest re-determination [10] the ITC notes that it has no way to separate the Chicago plant data from the aggregate data on Revere's operations. During the investigation, the commodity-industry analyst primarily responsible for the investigation was told by the president of Revere that discrete Chicago plant data could not be readily provided. Revere's president also told the analyst that the Chicago plant was relatively minor compared to Revere's two other plants (Revere's regional operations), and that in any event, the condition of the Chicago plant was not significantly different from the Northeast region plants. Defendant argues that the aggregate data for Revere's operations is therefore the "best information available" and that, as such, it constitutes lawful and substantial support for the ITC's finding of injury to Revere under Section 776 of the Tariff Act of 1930 (19 U.S.C. § 1677e(b)).

The defendant's position on the Chicago plant lacks the requisite substantial legal support. The most fundamental flaw with the ITC's determination lies in the nature of the data itself.

As noted previously by the Court:

The regional industry provision, and therefore an investigation of material injury to a regional industry, is limited to producers "within such market who sell all or almost all of their production of the like product in that market." Section 771(4)(C) of the Tariff Act of 1930 (19 U.S.C. § 1677(4)(C)).

Since it has already been determined that a regional industry in a separate and isolated market, with specified boundaries does exist, the ITC may not now ignore those boundaries when evaluating evidence for the purpose of determining whether the same regional industry has been materially injured. The proscription against the use of data from elsewhere is necessary to insure that the regional industry found to exist at an earlier juncture is actually the subject of the later material injury investigation. *Atlantic Sugar, Ltd., et al. v. United States,* 4 CIT 248, 553 F.Supp. 1055 (1982).

In addition to the statutory requirement that the investigation be confined to the region, the necessity of limiting investigative data to Revere's regional operations also flows from the logical requirements for evidence in this type of investigation.

The Chicago plant is one of only three plants operated by Revere.[11] Evidence in the record indicates that production at this plant is of sufficient quantity so that the inclusion of its statistics in the aggregate data could significantly disguise or distort the data for Revere's regional operations.

Given the inability to separate the Chicago plant data or determine its effects upon the aggregate data, it is not possible to say that the aggregate date used by the ITC is fairly and accurately representative of Revere's regional operations.

It is essential that the evidentiary predicate from which the ITC draws reasonable inferences be representative of the subject of inquiry. Inasmuch as the Revere data utilized by the ITC lacks this essential quality, all inferences made from the data regarding the Revere regional operations, no matter how logical in the abstract, are no more than speculation or conjecture.

Defendant's protestation that the aggregate Revere data was justifiably employed as "the best information available" is without merit. First, the law only allows the agency to resort to less ideal evidence when "... a party or any other person *refuses or is unable to produce* information ... or otherwise *significantly impedes* an investigation ...." Section 776 of

---

**10.** *Sugars and Sirups From Canada,* Inv. No. 731–TA–3 (March 22, 1983).

**11.** Revere's plants are located in Brooklyn, New York; Charlestown, Massachusetts; and Chicago, Illinois.

the Tariff Act (19 U.S.C. § 1677e(b)). (emphasis added) The uncontroverted evidence shows only that the data on Revere's regional operations was "not readily available." This degree of difficulty cannot be said to rise to the level of a refusal or inability to provide the requested information or a significant impediment, particularly given the critical importance of regional data to a regional investigation. If the Court were to strain and allow such a construction, it would be rendering meaningless the ITC's obligation to conduct an accurate investigation within the region. *See Budd Co. Ry. Division v. United States*, 1 CIT 67, 507 F.Supp. 997 (1980). Second, even if Revere was unable or unwilling to provide the regional data, the information used by the ITC still does not constitute proper evidence. It is not simply weaker evidence substituted for stronger evidence. It is irrelevant and immaterial data substituting for evidence. Its usefulness has been completely destroyed by the inclusion of the Chicago plant.

The Court also has other reservations concerning the use of the aggregate Revere data. The assertion by Revere's president that the Chicago data was not readily available lacks plausibility, because it is reasonable to expect that a large corporation such as Revere would maintain records of the separate operations of its plants. In addition, since a regional industry with a separate and distinct character was determined to exist,[12] it is reasonable to expect that data reflecting this separation would be readily ascertainable from those who are producers in the region. The claim that the size of the Chicago plant was relatively minor is refuted by evidence in the record. Finally, the assertion that the condition of the Chicago operation was similar to the condition of the regional operations depends on precisely the kind of separate data that Revere's president said was not readily available.

Given these reasons, the data relied upon by the ITC in making its determination that Canadian refined sugar imports materially injured Revere Sugar Corporation's Northeast regional operations is wholly unsuitable as substantial legal support for the ITC's findings. As a result of the lack of support for a finding of injury to Revere, the Court cannot sustain the ITC's determination of injury to "the producers of all or almost all of the production within that market." Section 771(4)(C) of the Tariff Act (19 U.S.C. § 1677(4)(C)). The removal of Revere from the group of producers injured dramatically reduces the injury to the region to a level clearly below the amount required to sustain a regional injury determination. With the percentage of regional production adversely affected by Canadian imports now reduced to less than three quarters of regional production, it can no longer be said that injury is being done to the producers of all or almost all of the production in that market. The pervasiveness of injury which the Court believes is necessary to a finding of injury within a region is lacking.

Accordingly, it is hereby

ORDERED that the final injury determination and the resultant antidumping duty order are vacated.

**12.** *Atlantic Sugar, Ltd., et al. v. United States*, 2 CIT 295 (1981).