TIANJIN MACHINERY IMPORT & EXPORT CORP. AND SHANDONG MACHINERY IMPORT & EXPORT CORP., PLAINTIFFS  v.  UNITED STATES AND U.S. INTERNATIONAL TRADE COMMISSION, DEFENDANTS, AND WOODINGS-VERONA TOOL WORKS, DEFENDANT-INTERVENOR

Court No. 91–03–00222

(Dated December 1, 1992)

*Skadden, Arps, Slate, Meagher & Flom, (Rodney O. Thorson, John J. Burke, R. Nicholas Singh)*, for plaintiffs.

*Office of General Counsel, United States International Trade Commission (Lyn M. Schlitt, General Counsel, James A. Toupin, Assistant General Counsel, and Abigail A. Shane)* for defendant.

*Wiley, Rein & Fielding, (Charles Owen Verrill, Jr., Alan H. Price, Willis S. Martyn III)*, for defendant-intervenor.

## MEMORANDUM OPINION

GOLDBERG, *Judge:* This action comes before the court on plaintiffs' motion for judgment upon the agency record and request for remand. Plaintiffs challenge the final affirmative injury determination by the United States International Trade Commission ("Commission") in *Heavy Forged Handtools From the People's Republic of China,* Inv. No. 731–TA–457 (Final), USITC Pub. 2357 (Feb. 1991). The court sustains the Commission's determination in part and holds that it was supported by substantial evidence. The court also finds that the Commission's determination, in part, was not based upon substantial evidence or in accordance with law, and grants plaintiffs' request for a remand as to the relevant part.

## BACKGROUND

Defendant-Intervenor Woodings-Verona Tool Works ("Woodings-Verona"), a United States importer of heavy forged handtools, filed an antidumping duty petition on behalf of the United States industry on April 4, 1990 (the "Petition"). The Petition alleged, in part, that imports of hammers/sledges, bars/wedges, picks/mattocks, and axes/adzes from the People's Republic of China ("PRC") were being sold in the United States at less than fair value. It noted that the PRC had a nonmarket economy.

Plaintiffs, Tianjin Machinery Import and Export Corporation and Shandong Machinery Import and Export Corporation, along with Henan Machinery Import & Export Corporation, are the only three PRC companies that export the subject merchandise.

A copy of the Petition was also filed with the Commission. The Commission instituted a preliminary investigation on April, 11, 1990. *See Heavy Forged Handtools from the People's Republic of China,* Inv. No. 731–TA–457, 55 Fed. Reg. 13673 (ITC 1990).

Commerce also initiated an antidumping investigation. *See Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China,* 55 Fed. Reg. 18364 (Dep't Comm. 1990). Commerce defined the classes or kinds of merchandise subject to investigation as hammers and sledges; bars over 18 inches in length, track tools, and wedges; picks and mattocks; and, axes, adzes, and similar hewing tools.

In April and May, 1990, post-conference briefs were filed by the parties with the Commission. In their post-conference brief, plaintiffs contended that the domestic "like product" definition of bar tools should be enlarged to include bar tools eighteen inches and under. The Commission issued its preliminary determination in May, 1990, and found that imports of the subject merchandise caused material injury to the domestic producers. *See Heavy Forged Handtools From the People's Republic of China,* Inv. No. 731–TA–457 (Preliminary), USITC Pub. 2284 (May 1990). In its preliminary determination, the Commission specifically stated it could not investigate whether to broaden the definition of bar tools because the issue was first raised in post-conference briefs. However, it stated that the issue would be revisited in the final investigation. (*Id.* at 8–11.)

On October 19, 1990, Commerce issued its preliminary determination. *See Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China,* 55 Fed. Reg. 42420 (Dep't Comm. 1990) (prelim. determination). Commerce subsequently issued its final determination on January 3, 1991. In its final determination, Commerce found that heavy forged hand tools from the PRC were being sold in the United States at less-than-fair-value. *See Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China,* 56 Fed. Reg. 241 (Dep't Comm. 1991) (final determination).

The Commission began its final investigation in October, 1990. The Commission sent questionnaires to numerous domestic producers and importers of the subject merchandise. Copies of the questionnaires were provided to all parties in mid December, 1990. The parties filed pre-hearing briefs in late December, 1990. On January 3, 1991, the Commission held both public and *in camera* hearings in the proceedings. In the *in camera* hearing, the Commission heard testimony regarding Woodings-Verona's financial status. Post-hearing briefs were filed by the parties in early January, 1991.

The Commission issued its final determination in February, 1991. *See Heavy Forged Handtools From the People's Republic of China,* Inv. No. 731–TA–457 (Final), USITC Pub. 2357 (Feb. 1991). In the final determination, the Commission found that the domestic producers of each class of merchandise suffered material injury as a result of imports.

In this court, plaintiffs filed an action challenging Commerce's final determination in *Tianjin Machinery Import & Export Corp. v. United States,* Court No. 91–03–00223, and the action now before this court

challenging the Commission's final determination. In the present proceedings, plaintiffs asserted four challenges to the Commission's final determination. Plaintiffs first claimed that the finding of material injury was not supported by substantial evidence. Secondly, they contended that the Commission failed to terminate the proceedings because a majority of the domestic hewing tools industry did not support the Petition. Plaintiffs also asserted the Commission failed to conduct a sufficient investigation of the domestic bar tool industry. Finally, plaintiffs argued that should plaintiffs prevail in their challenge to Commerce's determination in *Tianjin Machinery Import & Export Corp. v. United States,* Court No. 91–03–00223, the court should remand this action for a redetermination by the Commission based upon corrected dumping margins. However, in the action entitled *Tianjin Machinery Import & Export Corp. v. United States,* Court No. 91–03–00223, the court held Commerce correctly calculated the dumping margins. *See Tianjin Machinery Import & Export Corp. v. United States,* No. 92–195 (CIT 1992). As a result, this court need not address plaintiffs' final objection.

## DISCUSSION

### A. *Material Injury By Reason of Imports:*

Plaintiffs first asserted that the Commission's finding that the domestic industry was materially injured was not supported by substantial evidence. Plaintiffs argued that domestic producers were in fact "doing relatively well" and only Woodings-Verona did not "thrive" economically during the period of investigation. (Plaintiffs' Confidential Brief in Support of Rule 56.1 Motion for Judgment on the Agency Record ("Plaintiffs' Confidential Brief") at 17.) In support, plaintiffs contended that a financial analysis report showed that domestic producers' [    ]. Plaintiffs also argued that the Commission further ignored extensive evidence that Woodings-Verona suffered from financial difficulties caused by factors unrelated to imports of the subject merchandise. (Plaintiffs' Confidential Brief at 17–20.) Moreover, the Commission neglected to explain in its final determination "why it overlooked th[is] overwhelming evidence." (Plaintiffs' Confidential Brief at 22.)

An antidumping determination will be overturned only if it is not supported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. 1516a (b)(1)(B) (1988). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N.A.R. v. United States,* 14 CIT 409, 741 F. Supp. 936, 939 (1990) (quoting *Gold Star Co. v. United States,* 12 CIT 707, 708–709, 692 F. Supp. 1382 (1988) *aff'd,* 7 Fed. Cir. (T) 91, 873 F.2d 1427 (1989)). *See also Rhone Poulenc, S.A. v. United States,* 8 CIT 47, 50, 592 F. Supp. 1318 (1984).

The possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's finding from being supported by substantial evidence. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620 (1966). This standard of review accords deference to an

agency's conclusions. It is not the court's function to decide that it would have made another decision on the basis of the evidence. *Matsushita Elec. Indus. Co. v. United States,* 3 Fed. Cir. (T) 44, 54, 750 F.2d 927 (1984). The court will affirm the determination of the Commission when it is reasonable and supported by the record as a whole, even where there is evidence which detracts from the substantiality of the evidence. *Atlantic Sugar, Ltd. v. United States,* 2 Fed. Cir. (T) 130, 136, 744 F.2d 1556 (1984).

In an antidumping or countervailing duty investigation, the Commission is charged with determining whether:

(A) an industry in the United States —
(i) is materially injured, or
(ii) is threatened with material injury, or
(B) the establishment of an industry in the United States is materially retarded,
by reason of imports * * *.

19 U.S.C. §§ 1671d(b)(1) (1988) and 1673d(b)(1) (1988).

The legislative history of the Trade Agreements Act of 1979 specifically provides that "in examining the overall injury to a domestic industry, the [Commission] will consider information which indicates that harm is caused by factors other than the less-than-fair-value imports. However, the petitioner will not be required to bear the burden of proving * * * that material injury is not caused by such other factors." S. Rep. No. 249, 96th Cong., 1st Sess. 74 (1979), *reprinted in* 1979 U.S.C.C.A.N. 461. Moreover, the Commission "is not required to weigh the extent of injury from imports against the extent of injury from other causes, if they exist. The essence of its duty is to discern whether or not the imports are a cause of material injury to the industry." *Atlantic Sugar, Ltd. v. United States,* 2 CIT 18, 24, 519 F. Supp. 916 (1981) (citation omitted).

The court must therefore determine whether substantial evidence supported the Commission's finding that the domestic industry *as a whole* suffered material injury from imports. This court is not empowered with the responsibility, as plaintiffs suggest, of evaluating whether plaintiffs' alternative construction of the evidence is more persuasive. Specifically, the court is not authorized to determine whether factors unrelated to imports contributed, in whole or in part, to *Woodings-Verona's* financial condition.[1]

---

[1] Accordingly, the Commission is not required to explain in its final determination why it "overlooked" evidence concerning the cause of Woodings-Verona's financial problems. "The Commission is * * * presumed to have considered all of the evidence in the record especially where the facts allegedly ignored were presented at an open hearing." *Metallverken Nederland B.V. v. United States,* 13 CIT 1013, 1021, 728 F. Supp. 730 (1989) (citations omitted). In this action, plaintiffs fully presented their arguments to the Commission in both public and *ex parte* hearings conducted on January 3, 1991. (Public Record, Document No. 165; Confidential Record, Document No. 28.) Consequently, the Commission is presumed to have considered the data when determining whether the domestic industry as a whole suffered material industry by reason of imports, and need not distinguish every shred of divergent evidence.

In making its material injury determination under 19 U.S.C. §§ 1671d(b)(1) (1988) and 1673d(b)(1) (1988), the Commission:

(i) shall consider —

(I) the volume of imports of the merchandise which is the subject of the investigation,

(II) the effect of imports of that merchandise on prices in the United States for like products, and

(III) the impact of imports of such merchandise on domestic producers of like products, but only in the context of production operations within the United States; and

(ii) may consider such other economic factors as are relevant to the determination regarding whether there is material injury by reason of imports.

19 U.S.C. § 1677(7)(B)(i) & (ii) (1988).

In regard to the volume of imports factor, the Commission must consider whether the volume of subject imports, or any increase in that volume is significant. 19 U.S.C. § 1677(7)(C)(i) (1988). When evaluating the effect of the imported merchandise on prices, the Commission must determine whether significant price underselling of the subject merchandise occurred or whether imports otherwise significantly depressed prices. 19 U.S.C. § 1677(7)(C)(ii) (1988).

In examining the impact of the imports on domestic producers of like products, the Commission must evaluate:

all relevant economic factors which have a bearing on the state of the industry in the United States, including, but not limited to —

(I) actual and potential decline in output, sales, market share, profits, productivity, return on investments, and utilization of capacity,

(II) factors affecting domestic prices,

(III) actual and potential negative effects on cash flow, inventories, employment, wages, growth, ability to raise capital, and investment, and

(IV) actual and potential negative effects on the existing development and production efforts of the domestic industry, including efforts to develop a derivative or more advanced version of the like product.

The Commission shall evaluate all relevant economic factors described in this clause within the context of the business cycle and conditions of competition that are distinctive to the affected industry.

19 U.S.C. § 1677(7)(C)(iii) (1988).

None of the statutory factors are "necessarily dispositive of the question of material injury. The [Commission] is obligated to weigh all the pertinent evidence gathered in an investigation in reaching a determination." *Roses, Inc. v. United States,* 13 CIT 662, 665, 720 F. Supp. 180 (1989). "The Commission has broad discretion to ascertain which economic factors are relevant in an investigation, and the weight to be

given those factors." *Metallverken Nederland B.V. v. United States,* 13 CIT at 1019.

For each class of merchandise, the Commission found that both the domestic industry as a whole was materially injured, and that the injury was a result of the subject imports based on the factors contained in 19 U.S.C. § 1677(7)(B). The court finds that each of these determinations was supported by substantial evidence.

First, the Commission properly analyzed whether the four domestic industries were in fact materially injured. The Commission correctly based its determination on the economic factors that have a bearing on the status of the United States industry as specified in 19 U.S.C. § 1677(7)(C)(iii).

Moreover, substantial evidence supported the Commission's conclusion that although certain economic trends were mixed, the fact that "apparent consumption, domestic production, capacity utilization, and domestic shipments almost all declined for all four industries from the interim period of 1989 to the interim period of 1990" showed that the domestic industries suffered material injury. *Heavy Forged Handtools From the People's Republic of China,* USITC Pub. 2357 at 25 (1991). For example, apparent domestic consumption of digging tools decreased significantly in both quantity and value terms from 1989 through 1990. (*Id.* at 23, A–39.) Domestic capacity utilization of hewing tools likewise declined from 1988 through 1990. (*Id.* at 23) The quantity and value of domestic shipments of bar tools and digging tools also continued to decline sharply in 1989. (*Id.* 22, 23.)

Moreover, the Commission's determination that "the declining overall profitability of the producers, particularly their poor return on fixed and total assets" indicated material injury was also supported by substantial evidence. *Id.* at 25. Specifically, in addition to meager returns on both fixed and total assets, net sales for overall establishments of the producers decreased from 1989 to 1990, and from the interim periods of 1989 to 1990. (*Id.* at 24, A–26) Operating income, operating income margins, gross profits, and gross profits as a share of net sales likewise declined. (*Id.* at 24, A–23.)

The Commission's determinations that the industries were injured "by reason of" the subject imports was also supported by substantial evidence. In regard to striking tools, the Commission found that evidence concerning both the statutory volume and effects factors contained in 19 U.S.C. § 1677(7)(B) (1988) demonstrated that dumping of the subject merchandise was a cause of material injury to the domestic industry. Evidence demonstrated that imports of the merchandise "increased dramatically" between 1987 through 1989. *Heavy Forged Handtools From the People's Republic of China,* USITC Pub. 2357 at 26, A–33 (1991). Market penetration also increased by approximately 25 percent both in quantity and value terms. (*Id.* at 27.) Moreover, while price comparisons of certain sledgehammers revealed undercutting and oversell-

ing, other sledgehammers and a second imported striking tool were consistently undersold.[2] (*Id.* at 27, A–50–51.)

Similarly, the Commission properly determined that domestic producers of bar tools suffered material injury by reason of imports. Evidence indicated that the quantity and value of imports of bar tools "increased sharply" from 1987 through 1989. *Id.* at 28, A–33. Market penetration of the merchandise measured in quantity and value terms remained constant from 1987 to 1988, then increased in excess of 40 percent from 1988 through 1989. (*Id.* at 28, A–11.) Price comparisons of two domestic bar products with comparable Chinese products were inconclusive, however, since 15 of 30 quarterly price comparisons showed underselling while 15 revealed overselling. (*Id.* at 28, A–51–52.) The Commission, however, maintains "broad discretion to ascertain which economic factors are relevant * * * and the weight to be given those factors." *Metallverken Nederland B.V. v. United States,* 13 CIT at 1019. Consequently, because economic factors other than price comparisons sufficiently indicated material injury by reason of imports, substantial evidence supported the Commission's finding that domestic producers of bar tools suffered material injury due to imports.

Substantial evidence further supported the Commission's determination that producers of digging tools were also materially injured as a result of imports. Imports "increased constantly from 1987 to 1989, both in terms of value and quantity." *Heavy Forged Handtools From the People's Republic of China,* USITC Pub. 2357 at 28–29, A–33 (1991). Market penetration likewise "started at a high level in 1987 and increased by approximately one-third from 1987 to 1989." *Id.* at 29, A–39. Additionally, all price data showed underselling by the imported product. (*Id.* 29, A–53.)

Finally, the Commission correctly determined that sales of hewing tools at less-than-fair-value materially injured the domestic industry. Imports of the merchandise increased penetration rose "almost thirty percent from 1988 to 1989" in volume, while in value terms, it "increased by nearly sixty percent * * * from 1988 to 1989." *Id.* at 29, A–39. Moreover, all price comparisons revealed substantial underselling by the imported product. (*Id.* at 30, A–54.)

None of the evidence cited by plaintiffs in their brief even marginally negated the credibility of the information upon which the Commission relied in finding that domestic producers as a whole suffered material injury as a result of sales at less-than-fair-value of the imported merchandise. Moreover, the evidence referred to by plaintiffs did not show that the Commission abused its broad discretion in determining which statutory factors were relevant in the investigation, or the weight to be given each factor. The court therefore finds that substantial evidence supported each of the Commission's determinations that the domestic

---

[2] Plaintiffs argued that evidence of mixed overselling and underselling prevented a finding by the Commission of significant price undercutting. However, "[i]nstances of overselling do not preclude the Commission from finding significant or pervasive underselling." *Metallverken Nederland B.V. v. United States,* 13 CIT at 1024. As a result, the Commission may find, as it did here, that extensive price undercutting existed along with overselling.

industry of each class of merchandise suffered material injury by reason of imports.

## B. *Failure to Terminate the Investigation:*

Plaintiffs next asserted that the Commission erred by failing to terminate the proceeding regarding hewing tools because a majority of the domestic hewing tools industry did not support the Petition. Plaintiffs based their argument on 19 U.S.C. § 1673a(b) (1988) which mandates that an antidumping petition must be filed "on behalf of an industry." Plaintiffs contended that this statute is in effect a jurisdictional "standing" requirement, and "petitioner's standing to be before an agency is a prerequisite for the assertion of jurisdiction by the agency." (Plaintiffs' Confidential Brief at 26.) Accordingly, the Commission is "affirmative[ly] obligat[ed] to determine the standing of petitioners in antidumping actions." (Plaintiffs' Confidential Brief at 26.)

Plaintiffs argued that a majority of the domestic hewing tool industry did not support the Petition because [    ], a significant producer of hewing tools, informed the Commission on November 30, 1990 in its questionnaire responses that it opposed the Petition. (Confidential Record, Document No. 45.10, at 5.) Consequently, since a majority of the domestic industry opposed the Petition, neither Commerce nor the Commission had jurisdiction to proceed with the investigation. Plaintiffs concluded that the Commission erred by failing to dismiss the hewing tool proceeding as a result of [    ] questionnaire response, or by failing to immediately inform Commerce of the opposition to the Petition.

The Commission's final determination was silent on the issue of [    ] opposition to the Petition, and provided no explanation of the Commission's apparent decision that termination of the hewing tool proceeding was not warranted. As a result of the Commission's failure to provide any indication of the course of conduct pursued after receiving [    ] opposition, the Court finds that the Commission's final determination regarding hewing tools was not supported by substantial evidence. The court therefore remands this action to the Commission. Upon remand, the Commission is instructed to specify the course of conduct taken as a result of the opposition filed by [    ] and the underlying reasons for its actions. The Commission is specifically directed to provide an explanation for any determination, should one have been made, that the statutory language "on behalf of" contained in 19 U.S.C. § 1673a(b) was not a traditional, jurisdictional standing requirement, or any conclusion that the authority or obligation for determining that the petition was filed "on behalf of" the domestic industry lay with Commerce, and not the Commission.

## C. *Investigation of Bar Tools Industry:*

Plaintiffs also challenged the Commission's investigation of the bar tools industry. In the Petition, Woodings-Verona alleged that the domestic "like product" pursuant to 19 U.S.C. §§ 1677(4)(A), 1677(10) (1988) for the imported bar tools subject to the investigation included

only bar tools longer than eighteen inches. The Commission ultimately determined, however, that the domestic "like product" also included bar tools eighteen inches and under. Plaintiffs asserted for the first time in this appeal that, nevertheless, the Commission failed to "collect critical information, including pricing data and the identification of all producers" regarding bar tools eighteen inches and shorter. (Plaintiffs' Confidential Brief at 32.)

Title 28 of the United States Code, Section 2637(d) (1988) provides that this court "shall, where appropriate, require the exhaustion of administrative remedies."

"A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Commission of Alaska v. Argon,* 329 U.S. 143, 155 (1946). "[T]o preserve an issue for judicial review it must have been raised at the administrative level 'at the time appropriate under [the agency's] practice.'" *Al Tech Specialty Steel Corp. v. United States,* 11 CIT 372, 376, 661 F.Supp 1206 (1987) (quoting *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37 (1952).

Several exceptions to the exhaustion of remedies doctrine exist, including when "requiring exhaustion would be futile, a useless formality, or pursuit of a manifestly inadequate remedy." *Wieland Werke, AG v. United States,* 13 CIT 561, 567, 718 F. Supp. 50 (1989). Exceptions have also been permitted when judicial interpretations of existing law were decided after the contested administrative determination, or where the agency did not adhere to controlling precedents. *Id.*

In the instant case, the Commission notified plaintiffs by December, 1990 of the products for which pricing data had been gathered. Plaintiffs were additionally provided with copies of producer questionnaires at that time, and with the Commission's Pre-Hearing Report. (Confidential Record, Document Nos. 13, 46E, 46G, 46H.) Plaintiffs therefore had sufficient opportunity to provide the Commission with objections to the bar tools investigation prior to the filing of the Commission's final determination in February, 1991. Nevertheless, plaintiffs failed to notify the Commission of their objections to the investigation, and deprived the Commission of the opportunity to "consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Commission of Alaska v. Argon,* 329 U.S. at 143. Further, none of the judicially recognized exceptions to the exhaustion of remedies doctrine apply in this case. The court finds therefore that plaintiffs are estopped from challenging the investigation of the Commission regarding bar tools eighteen inches and under.

## Conclusion

For the reasons provided above, this court holds that the Commission's final determination regarding heavy forged handtools from the PRC was, in part, supported by substantial evidence and in accordance with law. Accordingly, the Commission's determination is sustained in part, and plaintiffs' motion for remand is granted in part.